**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Denise Moore,

    *Plaintiff,*

v.

PNC Bank,
    *Defendant.*

No. 19 CV 2707

Judge Lindsay C. Jenkins

**MEMORANDUM OPINION AND ORDER**

Plaintiff Denise Moore brings this employment discrimination lawsuit against Defendant PNC Bank, N.A. ("PNC"), for allegedly failing to accommodate her epilepsy in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 *et seq.* Before the Court is Defendant's motion for summary judgment. [Dkt. No. 51]. For the reasons that follow, that motion is granted in full.

## I.  **Background**

### A.  **Local Rule 56.1**

Parties fail to comply with the local rules at their own peril. *Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014). This principle rings especially true of Local Rule 56.1, which serves to "inform the court" at the summary judgment stage "of the evidence and arguments in an organized way—thus facilitating its judgment of the necessity for trial." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). The rule requires a party moving for summary judgment to serve and file a statement of material facts—concisely set forth in numbered paragraphs and supported with specific citations to the record—as to which that party contends there can be no genuine dispute. L.R. 56.1(a)(2), (d).

The non-moving party must then serve and file a response to this statement. L.R. 56.1(b)(2). That response must set forth, in numbered paragraphs corresponding to those set forth by the movant, the text of each of the moving party's asserted facts. L.R. 56.1(e)(1). The non-movant must then admit, dispute, or admit in part and dispute in part the factual content of each paragraph. L.R. 56.1(e)(2). If the non-movant disputes a fact, she must cite to "specific evidentiary material that controverts the fact and . . . concisely explain how the cited material controverts" it. L.R. 56.1(e)(3). Critically, facts asserted by the movant "may be deemed admitted if not controverted" in the manner called for by the rule. *Id.*

This procedure, mandated by the Northern District of Illinois pursuant to Federal Rule of Civil Procedure 83(a), "is not merely aspirational—it is a rule of procedure like any other, for which the failure to comply can carry severe consequences." *Richardson v. Kharbouch*, 2023 WL 2711480, at *2 (N.D. Ill. Mar. 30, 2023). District courts possess "broad discretion to require strict compliance with Local Rule 56.1," *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008), and are not required to "scour the record looking for factual disputes" on a party's behalf. *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015). Where the non-movant fails to file a responsive statement at all, a court may credit the moving party's "version of the facts to the extent that it is supported by evidence in the record," *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012), keeping in mind, of course, its unflagging obligation to view even

those facts "in the light most favorable to" the non-movant. *Arevalo-Carrasco v. Middleby Corp.*, 851 Fed. App'x 628, 629 (7th Cir. 2021).

Plaintiff has neither responded to Defendant's statement of material facts nor filed a statement asserting additional material facts of her own. *See* L.R. 56.1(b)(3). If that weren't enough, the few citations to the record Plaintiff does include in her opposition brief refer to *entire* exhibits, such as lengthy deposition transcripts, without citation to any specific portion of those exhibits. *E.g.*, [Dkt. No. 54, 4] ("PNC knew Ms. Moore's workload caused her great stress (See, Moore deposition) . . . ."); [*id.* at 5] ("Ms. Moore performed her job fully during the entire time that PNC was providing her with a reasonable accommodation. (See, defendant's Exhibit 1, deposition of Denise Moore, and defendant's Exhibit 2, deposition of Marilyn Gross).").

If Plaintiff intended by these omissions to send the Court on a fact-finding expedition into the record, the Court declines that invitation. It will not undertake the task of building Plaintiff's case for her. To do so would reward non-compliance with the rules and strain our "adversarial system of adjudication," which "'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.'" *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment)) (alteration in original).

For these reasons, the Court exercises its discretion to strictly enforce Rule 56.1 in this case. The Court's citation to a fact asserted by Defendant in its statement of material facts indicates the Court's conclusion that that fact is supported by evidence and, therefore, properly accepted as true as a consequence of Plaintiff's failure to comply with this District's rules. Furthermore, the Court will not permit Plaintiff to circumvent Rule 56.1 through vague and non-specific references to entire deposition transcripts in her opposition brief. Because those references fail to cite to "particular parts of the record," as required by Federal Rule of Civil Procedure 56(c)(1)(A), the Court disregards them. *See Lynch v. Bielicke*, 2019 WL 1670804, *1 n.1 (considering "deposition transcripts only to the extent they have been cited with particularity by a party"); *Greene v. Paramount Pictures Corp.*, 340 F. Supp. 3d 161, 163 n.2 (E.D.N.Y. 2018) (refusing to consider "factual propositions" supported by citations "to entire deposition transcripts, without pin citations.").

## B.  **The Undisputed Facts**

Defendant is a retail bank that offers a wide array of financial services to its customers, including mortgage lending. [Dkt. No. 52, ¶ 1]. PNC hired Plaintiff as a full-time Loan Closing Analyst (also known as a "Closer") on October 11, 2016.[1] [*Id.* at ¶¶ 2–3]. In this capacity, Plaintiff was responsible for ensuring that PNC and mortgagors were ready to close on mortgage loans. This entailed "quickly and accurately reviewing . . . mortgage file[s], checking to see if other departments had

---

[1]    Plaintiff initially worked for PNC in a "temporary assignment." [Dkt. No. 52, ¶ 2].

accurately provided all of the necessary items, and following up on missing items, among other things." [*Id.* at ¶ 3].

Closers play a key role in facilitating mortgage transactions at PNC. A failure to identify a missing document or flag a material error in a document can delay the disbursement of funds to the mortgagor, to the obvious detriment of both customers and PNC. [*Id.* at ¶ 4]. Naturally, some mortgage transactions are assembled on a short timetable. For this reason, "[n]ot all mortgage files" are "ready for handling" by the Closing department "reasonably in advance of the scheduled closing date." [*Id.* at ¶ 5]. When this is the case, Closers are required "to handle . . . files on a 'rush' or 'same day' basis . . . ." [*Id.* at ¶ 5]. PNC considers "the ability to handle" files on such abbreviated timelines an "essential function[] of the Closer position," along with the ability "to handle more than two files per day . . . ." [*Id.* at ¶ 6].

Plaintiff suffers from epilepsy, anxiety, and depression. [*Id.* at ¶ 10]. Around late 2016 or early 2017, not long after Plaintiff started as a Closer, the stress of her job exacerbated these conditions and "triggered . . . epileptic seizures." [*Id.* at ¶ 11]. As a result, Plaintiff was "unable to focus" on her work and was experiencing "'a lot of stress and anxiety.'" [*Id.*] After initially attempting to work through these challenges, [*Id.* at ¶ 14], Plaintiff took "the first of multiple approved leaves of absences from work" to seek treatment. [*Id.*]

Although the precise timing of this initial leave of absence is difficult to pin down, the Court infers from comments Plaintiff made to the EEOC and at her deposition that it began in the first half of 2017. *See generally* [Dkt. No. 13, 12–18].

Plaintiff testified at her deposition that, "[a]fter being off the first time," she informed Marilyn Gross, her supervisor, that she would "need[] a different type of position." [Dkt. No. 52-1, Moore Dep. Tr. 120:9–17]. Plaintiff reported to the EEOC (in a letter the Court discusses in greater detail below) that this conversation took place in the "first half of 2017." [Dkt. No. 13, 12].

The exact timing is not overly important. What is important is Plaintiff's conversation with Gross, which put Gross on notice that Plaintiff was seeking a different position as an accommodation for her epilepsy. Gross gave the request some consideration. When Plaintiff returned to work, Gross asked her if she would consider working as a "Funder," a position she had previously held at JP Morgan. [*Id.*]; [Dkt. No. 52-1, Moore Dep. Tr. 56:1–8]. Plaintiff expressed interest in the position but apparently did not hear from Gross about it thereafter. [Dkt. No. 13, 12].

Nothing came of Plaintiff's initial reassignment request, and Plaintiff continued to work as a Closer. Unfortunately, Plaintiff continued to suffer serious limitations due to her epilepsy, and, in November 2017, Plaintiff's physician restricted her from driving. [Dkt. No. 52, ¶ 16]. To accommodate this restriction, Defendant permitted Plaintiff "to work from home five days per week." [*Id.* at ¶ 17]. Other Closers "were typically limited to working from home no more than two days per week." [*Id.*] Plaintiff was cleared to drive again on June 15, 2018. [*Id.* at ¶ 16].

"[I]n or about January 2018"—before she was cleared to resume driving—Plaintiff asked again to be placed in a less stressful position at PNC. [*Id.* at ¶ 29]. Employee Relations Specialist Lisa Wissinger and Employee Area Manager Tara

Olderman considered Plaintiff's request, but "did not believe it appropriate or possible to place Moore in a different position at PNC" without "her input or any guidance from her and her physician regarding what type of role would meet her" specific medical needs. [*Id.* at ¶ 32]. Both felt ill-equipped to assess the relative stress levels incident to other positions at PNC, an inquiry that, in their view, "was largely subjective" and depended greatly on Plaintiff's individual experience. [*Id.* at ¶ 32–33]. For these reasons, Plaintiff was told that "she would have to search for open positions at PNC and apply for them." [*Id.* at ¶ 35].

To facilitate this process, Wissinger and Olderman put Plaintiff in touch with Maryann Phillips, "an Internal Placement Recruiter ('IPR')" at PNC. [*Id.* at ¶¶ 34, 37]. Phillips was responsible for helping Plaintiff "apply for a role" that Plaintiff "felt would be a good fit for her . . . ." [*Id.* at ¶ 34]. To this end, Phillips "reviewed and revised" Plaintiff's resume and made herself available to Plaintiff in case she needed help navigating PNC's "internal and external . . . job search platforms." [*Id.* at ¶¶ 36–37]. Plaintiff found Wissinger, Olderman, and Phillips' efforts superficial and unhelpful. *See* [Dkt. No. 13, 16].

Plaintiff applied to "'one or two' positions at PNC," [*Id.* at ¶ 39], but remembers next to nothing about them. Among other missing details, Plaintiff "is unsure whether she looked or applied for a . . . position . . . outside the Closing department." [*Id.* at ¶ 38]. And although Plaintiff does remember applying "for a different role in the Closing department," [*Id.* at ¶ 40], she does not remember the title of that position, its duties, work hours, or workload. [*Id.* at ¶¶ 39–40]. Plaintiff also cannot

remember if that position (or any of the others to which she allegedly applied) was "ever filled or, if so, by whom." [*Id.* at ¶ 40].

Nothing came of these applications, and, on July 25, 2018, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity ("EEOC"). That charge alleged that PNC was failing to accommodate her disability in violation of the ADA. [Dkt. No. 13, 8]. The charge itself was sparse on facts, alleging only that Plaintiff had "informed" PNC of her disability and "requested a reasonable accommodation," which "was not granted." [*Id.*] The EEOC issued Plaintiff a right to sue letter on March 25, 2019. [*Id.* at 7].

Plaintiff continued to work as a Closer—both while her charge was pending and after receiving the right to sue letter. During this time, she continued to struggle with her epilepsy. On September 10, 2018, Plaintiff's physician restricted her to "performing a 'moderate or below moderate level of work' for four to six weeks." [Dkt. No. 52, ¶ 21]. Defendant found the note "vague," but—starting in October of 2018— accommodated the restriction by assigning Plaintiff "no more than two files each day, with no 'rush' or 'same day' files." [*Id.* at ¶ 22]. Defendant maintained this accommodation—at least on paper—through Plaintiff's resignation on April 20, 2020. [*Id.* at ¶¶ 22, 52]. Because Defendant employs a limited number of Closers, this restriction "placed a burden on [Plaintiff's] co-workers, who consequently received more regular, 'rush' and 'same day' files." [*Id.* at ¶ 23].

Plaintiff claims that although Defendant "initially honored" this restriction, she received more than two files in a day, as well as rush files, on more than one

occasion. [*Id.* at ¶¶ 24–25]. Exactly when—or how many times—this happened, Plaintiff cannot recall. [*Id.*] After the first time, Plaintiff brought the over-assignment to the attention of Gross and Lorrain Ley, Gross's supervisor, who "took action." [*Id.*] Sometime after that conversation, however, Plaintiff was again over-assigned, this time "without any correction by Gross or Ley." [*Id.*]

Throughout this period, Plaintiff continued to take intermittent leave. "On or about July 26, 2019, Moore's doctor released her to return to work from" one such leave of absence, starting on July 29, 2019. [*Id.* at ¶ 26]. He limited her, however, to "working no more than four hours a day, five days a week, with no overtime." [*Id.*] Defendant "promptly approved Moore to work in accordance with those restrictions." [*Id.*] Pursuant to this accommodation, Plaintiff worked part-time until September 16, 2019, when she began another leave of absence. [*Id.* at ¶ 27]. Plaintiff was subsequently cleared to return to work "in or around November 2019" on the same part-time schedule, which Defendant once again approved. [*Id.*]

Plaintiff worked part-time in accordance with her physician's instructions until January 4, 2020, when he released her to work full-time "up to 40 hours per week, with no overtime and no more than two files per day." [*Id.* at ¶ 28]. As before, PNC "accommodated these restrictions . . . ." [*Id.*] Sometime in April 2020, Plaintiff's physician cleared Plaintiff "to work without any restrictions." [*Id.* at ¶ 52]. Plaintiff resigned almost immediately thereafter. [*Id.* at ¶ 28].

II.     **Legal Standard**

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is material if its determination by the trier of fact "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute with respect to such a fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

If, "after adequate time for discovery," the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In that situation, the movant is "'entitled to a judgment as a matter of law,'" provided the movant has satisfied its "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of" the record "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

A court's "function" at this stage "is not . . . to weigh the evidence and determine the truth of the matter," but rather to determine "whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented." *Anderson*, 477 U.S. at 249, 252. In conducting this inquiry, courts must "view the facts in the light most

favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Holloway v. City of Milwaukee*, 43 F.4th 760, 765 (7th Cir. 2022).

III. **Analysis**

Plaintiff commenced this lawsuit on April 22, 2019. [Dkt. No. 1]. Plaintiff's complaint—which she prepared *pro se*—brings a single failure-to-accommodate claim under the ADA. [Dkt. No. 13, 4]. The complaint provides practically no factual support for Plaintiff's claim, alleging only that she "ha[s] emails requesting accommodations that were never given." [*Id.* at 5]. Attached to the complaint, however, is a six-page statement Plaintiff provided to her EEOC investigator on November 30, 2018, "in response to [a] statement" PNC sent to the EEOC earlier in the month. [*Id.* at 8]. Given Plaintiff's *pro se* status at the time she filed the complaint, the Court assumes that the attached statement was intended to provide the factual support for her claim that was not provided in the body of the complaint itself.[2]

Read in light of the complaint's reference to "emails requesting accommodations," the attached statement makes clear that Plaintiff's primary theory of liability—both at the time the statement was written and at the time Plaintiff filed suit—was that Defendant failed to accommodate her disability by failing to reassign

---

[2]     The PNC statement is not in the record. Given the purpose of Plaintiff's statement—to rebut the factual assertions PNC made in its statement—it is not at all clear that Plaintiff's response was intended at the time it was drafted to set forth the full universe of facts supporting her failure-to-accommodate claim. Nevertheless, Plaintiff's decision to attach the statement to her complaint suggests that she intended to stand on the factual content of the statement. Because Plaintiff filed an application to proceed *in forma pauperis*, the complaint was screened for failure to state a claim. [Dkt. No. 8]. The Court concluded that Plaintiff's complaint stated a cognizable failure-to-accommodate claim on the basis of facts alleged in the attached statement. [*Id.*].

her to a less stressful position. The only emails referenced in the statement—and, therefore, the only emails to which the complaint can reasonably be understood to refer—are those Plaintiff sent to Marilyn Gross and Lorrain Ley requesting that she be transferred to a new position. [*Id.* at 13] ("In 2018, I submitted an email to Lorrain Ley and to Marilyn Gross asking the status of my request for a different position"); [*id.* at 15–16] ("I do not have a preferred position which is stated in an email that was sent to Marilyn Gross, and Lorrain Ley dated January 17, 2018. It states in the email 'This email is my request to be changed . . . to another position. Such as funder, etc.'").

It should therefore come as no surprise that Defendant's opening summary judgment brief was directed at this lone theory of liability. *See, e.g*, [Dkt. No. 53, 1] ("Denise Moore . . . claims that PNC violated the Americans with Disabilities Act . . . when it did not assign her to an unidentified, 'less stressful' position at the Bank."); [*id.*] ("Moore claims that she . . . could not perform her Closer position and that PNC should have reassigned her to an unidentified, 'less stressful' job as an accommodation."). In that brief, Defendant argued, among other things, that it was entitled to summary judgment because Plaintiff had failed to satisfy her burden of identifying a "vacant position for which she was qualified when she requested reassignment." [*id.* at 6]; *see Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 482 (7th Cir. 2017). This argument likely would have prevailed: it is well-established that "an employer may be required to reassign a disabled employee to a vacant position if the employee no longer can perform the essential functions of the job she holds," *Jackson v. City of Chicago*, 414 F.3d 806, 812–13 (7th Cir. 2005), but a plaintiff

proceeding on such a theory "bears the burden [of showing] that a vacant position existed for which she was qualified." *Jackson v. Humana Ins. Co.*, 2023 WL 2207632, at *2 (7th Cir. Feb. 24, 2023).

Perhaps realizing this, Plaintiff changed her strategy. Her opposition brief completely abandons the reassignment theory and now presses the very different claim that although Defendant reasonably accommodated her epilepsy for a time— by limiting her to "a full-time work week with no overtime and a limit to two files per day"—PNC unlawfully "strip[ped that] accommodation away by increasing [Plaintiff's] reduced workload." [Dkt. No. 54, at 5].

As a threshold matter, the Court agrees with Defendant that by "fail[ing] to present facts or develop any legal arguments" supporting her reassignment theory of liability, Plaintiff has abandoned that claim. *Little v. Mitsubishi Motors N. Am., Inc.*, 261 Fed. App'x 901, 903 (7th Cir. 2008); *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."); *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1997).

As Defendant points out in reply, however, it is not entirely clear that Plaintiff can pursue her *new* theory either. Defendant raises two issues on this front that the Court must address before it can reach the merits—(1) whether Plaintiff is impermissibly seeking to amend her complaint in her summary judgment brief; and (2) if not, whether Plaintiff exhausted this claim before the EEOC. The Court takes each in turn.

13

As to the former, the Court holds that Plaintiff's *pro se* complaint—though undoubtedly tailored towards a reassignment theory—sufficiently touches on the facts underlying her new theory to sustain her change in strategy. As to the latter, by failing to cite any legal authority in support of its exhaustion argument, Defendant has waived the issue. Accordingly, the Court reaches the merits of Plaintiff's new theory of liability. This ultimately makes no difference because no reasonable juror could conclude—on the record before the Court—that Plaintiff was qualified to perform the essential functions of the Closer position. Her failure-to-accommodate claim therefore fails, and Defendant is entitled to judgment as a matter of law.

A.     **Factual Scope of Plaintiff's *Pro Se* Complaint**

"A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). Because "'[t]he Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories,'" however, they are free to "alter those theories" in midstream, provided that doing so does not "unfairly harm the defendant or the case's development." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017) (quoting *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996)). Because the rules *do* require plaintiffs to plead factual allegations, however, a plaintiff cannot "introduce a new factual basis not previously presented in the pleadings for a claim" without moving to amend the complaint. *Whitaker v. Milwaukee Cty.*, 772 F.3d 802, 808 (7th Cir. 2014).

Defendant argues that that is precisely what Plaintiff is attempting to do here. [Dkt. No. 55, 4–5]. The Court sympathizes with Defendant's position, particularly in light of the heavy focus of the EEOC statement on Plaintiff's request for reassignment. But Plaintiff filed her complaint *pro se*, which means that her complaint is entitled to "'a liberal construction.'" *Eagen v. Dempsey,* 987 F.3d 667, 689 (7th Cir. 2021) (quoting *Nichols*, 755 F.3d at 600)). "'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Although the lion's share of the EEOC statement discusses facts relevant only to Plaintiff's abandoned reassignment theory, it does not exclusively do so. Critically, in response to a claim PNC made to the EEOC—presumably about the scope of Plaintiff's charge—Plaintiff stated unequivocally that "a new position was *not the only way* to provide [her] with an adequate accommodation." [Dkt. No. 13, 15] (emphasis added).[3] Elsewhere in the statement, Plaintiff discusses workload-based accommodations that she now claims Defendant unlawfully stripped from her, noting that Tara Olderman had "limit[ed] the amount of new" files she received to "no more than 2 a day and no rush files." [*Id.* at 14–15].

---

[3]  Some context is necessary here. Plaintiff made this statement in response to PNC's apparent claim that Plaintiff had represented to Employee Area Manager Tara Olderman that reassignment was the only way to accommodate her disability. In response, Plaintiff denied saying anything of the sort. Liberally construing the complaint, it is easy to see how Plaintiff might have intended by this rebuttal to preserve the full scope of her failure-to-accommodate claim and put her EEOC investigator on notice that she was open to any reasonable accommodation.

Liberally construed, Plaintiff's assertion that reassignment was not the only means of accommodating her disability, coupled with the statement's discussion of some of the accommodations Defendant provided Plaintiff while she was a Closer, are enough—though only by the thinnest of margins—to sustain the legal course correction. What ultimately matters is the factual content of the complaint, not Plaintiff's legal position on the significance of those facts, which she is free to change. Bearing in mind that Plaintiff was unrepresented when she filed the complaint, the Court holds in the interest of justice that she may pursue her new theory of liability.

## B. **Administrative Exhaustion**

But just because Plaintiff's complaint can be construed to support her new theory does not mean that she exhausted that theory before the EEOC. Before filing suit under the ADA, a plaintiff "must file a timely administrative complaint" with the EEOC. *Calvin v. Sub-Zero Freezer, Co.*, 697 Fed. App'x 874, 875 (7th Cir. 2017); *see* 42 U.S.C. § 12117(a). "After doing so, a plaintiff filing suit in federal court 'may bring only those claims that were included in her EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.''" *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (quoting *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005)). This requirement ensures both that "the EEOC and the employer" have "an opportunity to settle the matter" and "that the employer has adequate notice of the conduct the employee is challenging." *Chaidez*, 937 F.3d at 1004.

Defendant argues that even if the complaint is broad enough to encompass Plaintiff's new theory, she did not exhaust that theory before the EEOC and therefore cannot proceed on it now. Defendant's argument on this point, however, is limited to a single sentence in the introduction to its reply brief. [Dkt. No. 55, 1]. Defendant cites to no cases in support of its position, let alone apply them to Plaintiff's charge, even though a Plaintiff's failure to exhaust is an affirmative defense upon which the Defendant, not the Plaintiff, bears the burden of proof (and argument). *Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 922 (7th Cir. 2007).

In the district courts, as on appeal, "'perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived.'" *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) (quoting *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021)); *Baker v. Match Grove, Inc.*, 2023 WL 3737808, at *2 (N.D. Ill. May 31, 2023); *United States v. Blackman*, 2023 WL 3440384, at *7 n.7 (N.D. Ill. May 12, 2023); *Brooks v. Kim*, 2023 WL 3346823, at *6 (N.D. Ill. May 10, 2023); *Ford v. Rockford Bd. of Educ. (Rockford Sch. Dist. #205)*, 2016 WL 11673803, at *3 (N.D. Ill. Mar. 25, 2016) ("As to the exhaustion argument, the issue is left undeveloped even though it is defendant's burden to prove the affirmative defense.").

Plaintiff's new theory of liability does create legitimate exhaustion concerns. Depending on the timing of PNC's limiting Plaintiff to two files per day without overtime or rush files—which Plaintiff concedes was a reasonable accommodation— it is possible that Plaintiff's new claim, that PNC discriminated against her by lifting

that restriction, accrued *after* the EEOC issued her right to sue letter. In that case, it would be impossible for Plaintiff's new claim to have "grow[n] out of" the EEOC's "investigation of the allegations" in her charge. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). But the issue is not as straightforward as Defendant claims—i.e., whether Plaintiff specifically articulated this theory in her charge, [Dkt. No. 55, 4–5]. Just as the Court will not scour the record for factual disputes on Plaintiff's behalf, neither will it construct an affirmative defense on Defendant's. The principle of party presentation cuts both ways.

C. **The Merits**

For these reasons, the Court is able to reach the merits of Plaintiff's new theory of ADA liability. The ADA prohibits employers from "discriminat[ing] against . . . qualified individual[s] on the basis of disability." 42 U.S.C. § 12112(a). To this end, the statute requires employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," unless doing so "would impose an undue hardship on the operation of the [employer's] business." 42 U.S.C. § 12112(a), (a)(5). Both existing employees and applicants are entitled to reasonable accommodation. *Id.* § 12112(a)(5).

To make out a *prima facie* failure-to-accommodate claim, a plaintiff must prove that "(1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747–48 (7th Cir. 2011) (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)). The first of these elements

really consists of two distinct issues—whether an employee is disabled and whether an employee is a qualified individual. Accordingly, Plaintiff's *prima facie* case is best understood as consisting of four elements.

There is no dispute in this case that Plaintiff was disabled. There is also no dispute that Defendant was aware of that disability. Indeed, Plaintiff informed Marilyn Gross of her epilepsy within months of starting as a Closer and Defendant accommodated that condition in numerous ways prior to Plaintiff's April 2020 resignation. So far, so good. But Plaintiff must prove two more things to survive summary judgment—*first*, that she was a qualified individual at the relevant time, and, *second*, that Defendant failed to reasonably accommodate her disability in spite of that fact. Because Defendant moves for summary judgment on both issues, Plaintiff must "come forward with evidence" that would permit a reasonable jury to find for her on each. *Tate v. Dart*, 51 F.4th 789, 793 (7th Cir. 2022). As the Court now explains, she has done neither.

An employee is a "qualified individual" if she "can perform the essential functions of the employment position that she holds or desires," "with or without reasonable accommodation." *Id.* at § 12111(8). The phrase "essential function" is a legal term of art that denotes those tasks so inherent in the nature of a position that a disabled employee's inability to perform them with the aid of reasonable accommodation justifies the employer in disqualifying that employee from holding that position. *See* 29 C.F.R. § 1630.2(n)(1) ("The term essential functions means the fundamental job duties of the employment position the individual with a disability

19

holds or desires."). In other words, although the ADA charges employers with an exacting obligation to adapt the workplace to the needs of disabled employees, some abilities may be required of all employees—disabled or otherwise—and a disabled employee may not demand that the employer dispense with that requirement as an accommodation. *Severson*, 872 F.3d at 481.

A job function may be "essential" for myriad reasons. 29 C.F.R. § 1630.2(n)(2). The regulations identify three. First, a "function may be essential because the reason the position exits is to perform that function." *Id.* § 1630.2(n)(2)(i). Second, it may be deemed essential "because of the limited number of employees available among whom the performance of that job function can be distributed." *Id.* § 1630.2(n)(2)(ii). Finally, it might be essential because it is "highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function." *Id.* § 1630.2(n)(2)(iii).

This list is only illustrative. *Id.* § 1630.2(n)(2). Whether a given task is an essential function is ultimately a "factual question, *not* a question of law." *Tate*, 51 F.4th at 793 (quoting *Brown v. Smith*, 827 F.3d 609, 613 (7th Cir. 2016)) (emphasis original to *Brown*). The EEOC has "identif[ied] seven non-exclusive categories of evidence" that courts should consider when conducting this inquiry. *Tate*, 51 F.4th at 794. That list includes:

    (i) The employer's judgment as to which functions are essential;

    (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

    (iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

As both 29 C.F.R. § 1630.2(n)(3) and the Seventh Circuit's precedent in this area suggest, the inquiry into whether a particular job function is essential is highly nuanced and requires courts at the summary judgment stage to weigh a wide array of record evidence. That courts must consider such evidence where available does not change the fact that it is the plaintiff who bears the burden of proof on this issue, both at summary judgment and at trial. *Basden v. Professional Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996). So where the defendant adduces evidence tending to prove that a function is essential—and the plaintiff concededly cannot perform that function—the plaintiff must come forward with evidence of her own sufficient to create a genuine dispute on that question. Otherwise, judgment for the Defendant must follow. *Celotex Corp.*, 477 U.S. at 322–23.

To recap, Plaintiff now argues that Defendant violated the ADA by failing to accommodate her in her position as a Closer, not by failing to transfer her to a less stressful position. To prevail on this theory, Plaintiff must prove that she was qualified to perform the essential duties of her position as a Closer. Defendant argues that she was not qualified because the very accommodation Plaintiff now claims she

21

should have been provided—"a full-time work week with no overtime and a limit to two files per day," [Dkt. No. 54, 5]—would exempt Plaintiff from performing a task it deems essential, "handling more than two files per day." [Dkt. No. 55, 2] ("Handling more than two files per day and 'rush' and 'same day' files are essential functions of Moore's Closer position, and she admittedly could not perform those tasks.").

If Defendant is correct in its characterization of the Closer position's essential functions, Plaintiff's ADA claim—premised as it is on Defendant's failure to maintain an accommodation exempting Plaintiff from an essential function—must fail. Whatever the essential functions of a position may be, an accommodation is only reasonable if it "is one that allows the disabled employee" to perform those functions. *Severson*, 872 F.3d at 481. "If the proposed accommodation does not make it possible for the employee to perform [her] job, then the employee is not a 'qualified individual' as that term is defined in the ADA." *Id*.

In support of its position, Defendant relies primarily on the declaration of Marilyn Gross, who worked for PNC as an Operations Manager in the Closing Department until March of 2019. In that declaration, Gross declares under penalty of perjury (pursuant to 28 U.S.C. § 1746) that "PNC considered the ability to handle more than two files per day, as well as 'rush' and 'same day' files, essential functions of the Closer position." [Dkt. No. 52-2, ¶ 7]. This judgment rests on Gross's "personal knowledge" of the Closing department, over which she exercised supervisory authority for more than 3 years, [*Id*. at ¶¶ 1–2], as well as her "review of PNC's documents related to Moore's employment with PNC." [*Id*. at ¶ 4].

22

In an ordinary case, this evidence would be far from sufficient to conclusively determine the essential conditions of Plaintiff's job as a Closer. Although the judgment of the employer is "an important" factor, it is "not necessarily decisive." *Tate*, 51 F.4th at 794; *see also* 42 U.S.C. § 12111(8) (providing that "consideration shall be given to the employer's judgment as to which functions of a job are essential"). The Seventh Circuit has been careful to note that although "some degree of deference is appropriate," "an employer's stated judgments about which functions are essential may or may not be consistent with the job as actually performed, or perhaps even as set forth in written job descriptions." *Tate*, 51 F.4th 794. "Careful attention" must therefore be paid "to the regulation's other evidentiary factors" which "can counter the employer's judgment." *Id.* at 795.

The problem for Plaintiff is that despite having had ample opportunity to conduct discovery, and despite being represented by counsel, she has failed to adduce any evidence on the other side.[4] Lacking any evidence of her own, Plaintiff's only strategy is to attack the probative value and admissibility Defendant's evidence. But, again, it is her burden to prove that she is a qualified individual, which entails—at the very least—coming forward with evidence that Defendant's "stated judgments" are inconsistent with "the job as actually performed," "as set forth in written job

---

[4]    In fact, the only other evidence the Court is aware of that bears any relation to the seven categories of evidence enumerated by 29 C.F.R. § 1630.2(n)(3) supports Defendant. Defendant's Rule 56.1(a)(2) statement of material facts—undisputed by virtue of Plaintiff's failure to file a response—reports that exempting Plaintiff from being assigned more than two files per day or rush files "placed a burden on her co-workers, who consequently received more regular, 'rush' and 'same day' files." [Dkt. No. 52, ¶ 23]. This fact bears on 29 C.F.R. § 1630.2(n)(3)(iv), "[t]he consequences of not requiring the incumbent to perform he function."

descriptions," etc. *Tate*, 51 F.4th at 794. Her failure to do so constitutes a "complete failure of proof concerning an essential element" of her case. *Celotex*, 477 U.S. at 323.

Instead of attempting to meet her burden with affirmative evidence, Plaintiff rests on the unsupported conclusion that "Plaintiff has established the essential functions of her job (in her deposition), and PNC Bank has presented no evidence to dispute Moore's recitations of her job functions as a closer at PNC . . . ." [Dkt. No. 54, 3]. For reasons already discussed, this generic reference to a 295-page deposition transcript does not constitute evidence of *anything*, much less evidence sufficient to overcome Defendant's judgment as Plaintiff's employer.

In any case, Defendant's criticisms fail on their own terms. Plaintiff attacks Gross' declaration as "an unsupported opinion" and argues that PNC's failure to provide the documents Gross "claims she reviewed in order to make the declaration" renders it inadmissible under Federal Rule of Civil Procedure 56(c)(4). [Dkt. No. 54, 5–6]. To the extent Plaintiff is arguing that Gross lacks personal knowledge of the essential duties of the Closer position, that contention must be rejected. *See* FED. R. EVID. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.") Gross spent several years overseeing the Closing department and Plaintiff has given the Court no reason to doubt that Gross would have developed personal knowledge of the duties of the Closer position by virtue of her supervisory role.

As for her argument under Rule 56(c)(4), Plaintiff provides no legal authority for the contention that a party must attach the documents relied on by a declarant in

order for the declaration to be admissible under the Federal Rules. Just as the Court refused to consider Defendant's unsupported exhaustion argument, Plaintiff's attack on the Gross declaration's admissibility is completely undeveloped and, therefore, waived. *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) (noting that "'arguments that are unsupported by pertinent authority[] are waived'") (quoting *White*, 8 F.4th at 552).

Plaintiff's final argument, though creative, also falls short. Accepting for the sake of argument the admissibility of the Gross declaration, Plaintiff emphasizes Gross's opinion that Plaintiff was "never in danger of losing her job at PNC." [Dkt. No. 52-2, ¶ 11]. In Plaintiff's view, this means she "must have been performing the 'essential functions' of a Closer up and to the date of her resignation; for if [she] had not been performing the essential functions of a Closer, [she] would certainly have been in danger of losing her job at PNC[]." [Dkt. No. 54, 3–4]. This argument rests on the logical fallacy that an employer would never extend to its employees greater accommodation than the ADA requires. As Defendant correctly notes in reply, however, "that PNC went out of its way to accommodate [Plaintiff] by relieving her of" the Closer position's essential functions "does not meant that they were not essential functions." [Dkt. No. 55, 8].

Accommodations "may very well go above and beyond what the ADA requires." *Tate*, 51 F.4th at 800. Where that is the case, an employer "'must not be punished for its generosity.'" *Severson*, 872 F.3d at 483 (quoting *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 545 (7th Cir. 1995)). Throughout Plaintiff's employment,

25

Defendant honored—without fail—the restrictions Plaintiff's physician prescribed. Plaintiff was permitted to work from home, to work part-time, and to work a reduced workload. [Dkt. No. 52, ¶¶ 17, 22, 26–27]. That PNC was willing to temporarily relieve Plaintiff from the essential functions of her position does not mean that those functions were not essential. Plaintiff has simply proffered no evidence that handling more than two files per day and rush files were not essential and Defendant's leniency does not count. *Winfrey v. City of Chi.*, 259 F.3d 610, 616 (7th Cir. 2001); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 929–30 (7th Cir. 2001).

Plaintiff has come forward empty-handed. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) (summary judgment "'is the proverbial put up or shup up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'") (quoting *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020)). It is undisputed that the ability to handle more than two files per day and rush files is among the essential functions of the Closer position, and Plaintiff has failed to identify any basis upon which a reasonable jury could discount that judgment. Therefore, Defendant has established that those abilities are essential functions as a matter of law.

This fact dooms Plaintiff's claim. The only accommodation Plaintiff claims Defendant should have provided her is "a full-time work week with no overtime and a limit to two files per day." [Dkt. No. 54, 5]. Because working on more than two files per day is an essential function of the Closer position, this is not a reasonable accommodation. *Severson*, 872 F.3d at 481. Plaintiff's argument that this

accommodation was necessary, moreover, is tantamount to an admission that she could not perform all of the essential functions of her job as a Closer. Accordingly, no reasonable juror could find, on this record, that Plaintiff is a qualified individual. Defendant is, therefore, entitled to summary on this issue alone.

Plaintiff has also failed to come forward with any evidence that Defendant failed to accommodate her in that position. It is undisputed that Defendant maintained the very accommodation Plaintiff now claims she was denied—"a full-time work week with no overtime and a limit to two files per day," [Dkt. No. 54, 5]—through her resignation in April of 2020. [Dkt. No. 52, ¶ 28]. Plaintiff seeks to overcome this by alleging that Defendant allowed supervisors to increase Plaintiff's workload "in violation of the accommodation PNC had implemented, thereby removing the accommodation and rendering it a nullity at best." [Dkt. No. 54, 4].

Plaintiff offers no evidence for this claim. At her deposition, she recalled instances when she received more than two files and rush files contrary to the accommodation PNC had put in place, but could not remember any specific instances, let alone "'how many times it happened'" or "when it occurred." [Dkt. No. 52, ¶ 24]. A reasonable jury could not conclude on the basis of this vague recollection alone, unsubstantiated with any specific dates or details, a failure to accommodate, particularly in light of the fact that Plaintiff's supervisors concededly addressed Plaintiff's concerns on at least one occasion. [*Id.*] Accordingly, even if Plaintiff could prove that she was qualified to perform the essential functions of the Closer position,

she has failed to adduce sufficient evidence upon which a jury could find that Defendant failed to accommodate her in that position.

## IV. Conclusion

For these reasons, the Court grants Defendant's motion for summary judgment in full. [Dkt. No. 51]. Civil case terminated.

Enter: 19-2707
Date: June 21, 2023

Lindsay C. Jenkins
United States District Court Judge